**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALIMAH GRAY**, individually; as parent, guardian, and next friend of **DANIEL FRANKLIN**, a minor; and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 10 cv 6377 |
| **ABBOTT LABORATORIES, INC.** d/b/a **ABBOTT SALES, MARKETING & DISTRIBUTION CO.**, a Delaware corporation; and **ABBOTT LABORATORIES** d/b/a **ABBOTT NUTRITION**, an Illinois corporation, | ) ) ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants Abbott Laboratories and Abbott Laboratories, Inc. (collectively, "Abbott") manufacture and distribute Similac, a brand of widely-used infant formula. In September 2010, Abbott announced that it was voluntarily recalling several of its powdered Similac products because an internal quality review detected the presence of beetles in the production area at one of its manufacturing facilities, creating the possibility that individual containers of the formula might be contaminated. Six-month-old Daniel Franklin became ill after ingesting one of the Similac products that was recalled. Franklin's mother, Alimah Gray ("Gray" or "Plaintiff"), filed this action individually, on Franklin's behalf, and on behalf of all other similarly situated consumers who purchased formula that was later recalled by Abbott. Plaintiff's amended complaint alleges several state law claims: negligence (count I); strict liability (count II); fraudulent misrepresentation (count III); negligent misrepresentation (count IV); breach of express warranty (count V); breach of implied warranty of merchantability (count VI); breach of implied warranty of fitness for a particular purpose (count VII); unjust enrichment (count VIII); and unfair and deceptive business practices (count IX). Defendants

move to dismiss Plaintiff's complaint for failure to state a claim. For the reasons explained below, the motion is granted in part and denied in part.

## **BACKGROUND**

Defendant Abbott Laboratories is an Illinois corporation and the parent corporation of Abbott Laboratories, Inc. (collectively, "Abbott" or "Defendants"), a Delaware corporation. Abbott designs, manufactures, markets, and distributes Similac, a popular brand of powdered infant formula. (Am. Compl. ¶¶ 10-11.) During an internal quality control review on September 16, 2010, Abbott discovered the possible presence of a small beetle in certain Similac product lines produced at a manufacturing facility in Sturgis, Michigan. (Am. Compl. ¶¶14-16; Defs.' Mem. Mot. to Dismiss Pls.' First Am. Compl. (hereinafter "Defs.' Mem."), at 2.) As a result, Abbott ceased production at the affected plant and after conducting an inspection of the facility, voluntarily recalled approximately 5 million containers of the product lines offered in plastic containers and cans on September 22, 2010. (Am. Compl. ¶ 18.) In the weeks that followed, the Food and Drug Administration (FDA) released several statements regarding the formula recall and eventually determined that the formula containing the beetles posed no long-term health risks, but explained the possibility that infants consuming the beetles or their larvae "could experience gastrointestinal discomfort and refusal to eat as a result of small insect parts irritating the GI tract." (FDA Press Release of 9/27/210, Ex. B to Defs.' Mem.) The FDA advised parents to consult a physician if such symptoms appeared and persisted for more than a few days, and Abbott offered a full refund to consumers who chose to return the product. Finally, in October, 2010, Abbott began to re-distribute the formula after working with FDA to implement preventative measures at the Michigan facility. (FDA Press Release of 10/26/210, Ex. C to Defs.' Mem.)

Shortly before the recall in September 2010, Gray, a Georgia resident, purchased several Similac products for her six-month-old son, Daniel Franklin. (Am. Compl. ¶ 29.) Gray specifically purchased a 34-ounce container of Similac Advance Early Shield Power with lot number 90341T20,

2

as well as several other unidentified Similac products, all of which Plaintiff alleges were part of the recall.[1] (Am. Compl. ¶ 31.) Gray alleges that immediately after Franklin ingested these Similac products, "he became ill with gastrointestinal discomfort, diarrhea, and [refused] to eat . . . ." (Am. Compl. ¶ 32.) Believing that the recalled Similac products caused her son's illness, Gray brought this suit against Abbott on October 5, 2010 individually, on behalf of Franklin, and on behalf of "all others similarly situated." Plaintiff contends that Abbott negligently manufactured and distributed Similac products even though Defendants knew of the possibility that some of the products were contaminated, failed to exert proper quality control measures, and failed to warn consumers of the potential health risks associated with Similac. Plaintiff alleges that Defendants' conduct resulted in her purchasing products that were not safe for consumption and did not provide the benefits Plaintiff expected to receive. (Am. Compl. ¶¶ 19-23.) Plaintiff maintains, further, that she specifically relied on certain advertisement statements on the packaging of Similac products that promoted the formula's "balance of protein, minerals, and other nutrients that help give babies a strong start in life." (Am. Compl. ¶¶ 12-13.) Defendants have moved to dismiss the nine state law claims presented in the Amended Complaint. The court will address each claim in turn.

## **ANALYSIS**

In order to survive a motion to dismiss for failure to state a claim, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In considering a 12(b)(6) motion, the issue is adequacy of the complaint, not whether it is meritorious; and thus, while detailed factual allegations are not required, a plaintiff has an obligation to provide "enough facts to state a claim to relief that is plausible on its face" and that "raise[s] a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

[1] Defendants do not dispute that products with lot number 90341T20 were part of the recall. Plaintiff Gray claims that she is no longer in possession of the other Similac products that she alleges were recalled. (Am. Compl. ¶ 31.)

3

570, 555 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

As a threshold issue, Defendants argue that Gray has failed to plead that she purchased a defective product; in other words, Gray's alleged purchase of a recalled Similac product is not enough to state a claim that her individual product was contaminated with insects. Gray contends that she has met her burden at this stage under the *Twombly/Iqbal* standard, and the court agrees. Gray claims that she purchased several containers of Similac shortly before the recall in September 2010, and her son became ill with gastrointestinal discomfort immediately after ingesting the formula. (Am. Compl. ¶¶ 29, 31.) Plaintiff alleges, further, on information and belief, that some containers of formula Franklin ingested contained insect pieces. (Am. Compl. ¶ 32.) Though she does not specify which particular container caused his illness, she does identify at least one container of Similac that she purchased with a recalled lot number. No more is required at this stage. While it is true, as Defendants suggest, that the symptoms Gray's son experienced are common ailments for any child his age, it is also plausible that infant formula contaminated by insects caused Franklin's illness, and therefore, the court is satisfied Gray has met the notice pleading standard and shown more than a "sheer possibility" that Abbott's product or products caused the injury.

Before addressing the individual claims at issue here, the court pauses to note that Plaintiff has not sought to certify this purported class. Under FED. R. CIV. P. 23(c)(1)(A), the court must determine whether to certify an action as a class action "at an early practicable time after a person sues . . .[,]" and Rule 23(d)(1)(D) authorizes the court to require "that the pleadings be amended to eliminate allegations about representation of absent persons . . . ." The class is currently represented by Gray and further defined as "all others similarly situated" (Am. Compl. ¶ 33), but the court believes greater specification as to the class definition is needed. Plaintiff asserts that this court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5 million and a member of the proposed

4

class is a citizen of a state different from both Defendants. Both Plaintiff Gray and Franklin are Georgia residents, but if Gray seeks to represent a nationwide class, common questions of law may not predominate over individual questions. Moreover, a nationwide class, governed by the laws of all 50 states might not be manageable.[2] *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002).

The court is not asked to certify the class at this stage, however, and will proceed to address the adequacy of Plaintiff's complaint as challenged the instant motion to dismiss. Before addressing the merits of Defendants' motion, the court must point out that Georgia law applies in this case. Plaintiff's claims all rest on state law and in diversity cases such as this one, the court "must follow the conflict of laws rules prevailing in the states in which they sit." *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 494 (1941). Illinois follows the Second Restatement of Laws' "most significant relationship test" when deciding choice-of-law issues, *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 61, 879 N.E.2d 910, 919 (2007), and the court agrees with Defendants that Georgia is the state with the most significant relationship to the causes of action and the parties: Georgia is where Gray presumably purchased any Similac products and where the alleged injury to her son occurred. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1017 ("If recovery for breach of warranty or consumer fraud is possible, the injury is decidedly where the consumer is located, rather than where the seller maintains its headquarters.").

### A. Count I: Negligence

To state a claim for negligence under Georgia law, a plaintiff must allege that a defendant owed the plaintiff a legal duty, the defendant breached that duty, an injury occurred, and there is

---

[2] In an earlier order, the court denied Plaintiff's motion to reassign two related cases, *Vuotto v. Abbott Laboratories, Inc.*, No. 10-cv-7255 (N.D. Ill. 2010) and *Brown v. Abbott Laboratories, Inc.*, No. 10-cv-6674 (N.D. Ill. 2010), to this court on a similar basis. [Doc No. 38.] Plaintiffs in *Vuotto* and *Brown* alleged identical causes of action against Abbott, but each of those cases were governed by the law of a different state.

5

a causal connection between the breach and the injury. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1297 (11th Cir. 2008), citing *Bradley Ctr., Inc. v. Wessner*, 250 Ga. 199, 200, 296 S.E.2d 693, 695 (1982) (quotation omitted). Plaintiff contends that (1) Abbott owes a duty to its consumers to use reasonable care in the manufacture and distribution of its products to ensure that they are not contaminated; (2) it was reasonably foreseeable that consumers of Similac would be injured by contaminated formula; and (3) Plaintiffs were directly and proximately injured as a result of Abbott's negligence. (Am. Compl. ¶¶ 38-41.) According to Defendants, Plaintiff's negligence allegations fall short of the requirements of *Iqbal* and *Twombly* because they fail to sufficiently plead injury and causation. The court disagrees. Gray's complaint alleges that she purchased Similac formula in September 2010, her son became ill as a result, and she believes that his gastrointestinal problems were due to consuming contaminated Similac products that were later recalled. The court agrees with Defendants that Gray has not provided a detailed description about the illness Franklin experienced, and it is obviously possible that Franklin's illness was unconnected to his ingestion of infant formula. These circumstances do not, however, require the conclusion that her complaint amounts to a "bare assertion" of causation, as Defendants suggest.

### B. Count II: Strict Liability

In Count II, Plaintiff alleges that Defendants are strictly liable for manufacturing and distributing defective Similac products because the insect pieces rendered the products unsafe for human consumption. (Am. Compl. ¶ 44.) Plaintiff alleges, further, that her son was directly injured as result of her purchase of these defective products. Defendants contend that Plaintiff's strict liability claim cannot survive under Georgia's strict liability statute, which requires a showing that defective merchandise was the "proximate cause" of the plaintiff's injury. Under Georgia law,

> [t]he manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to

6

the use intended, and its condition when sold is the proximate cause of the injury sustained.

O.C.G.A. § 51-1-11(b)(1). Defendants argue that the Amended Complaint does not contain enough factual content to allow the court to draw the reasonable inference that the specific unit of Similac Gray purchased was actually defective, or that Franklin suffered an injury that was proximately caused by a Similac product. (Defs.' Mem. at 8.) Again, in light of the pleading standards set forth in *Twombly/Iqbal*, the court must disagree. Plaintiff's complaint need not identify the specific unit of Similac that was allegedly defective and injurious at this stage; Plaintiff need only allege that Defendants are the manufacturers of the product, that the product was not merchantable, and that its condition when sold was the proximate cause of the injury sustained. *Chicago Hardware & Fixture Co. v. Letterman*, 236 Ga. App. 21, 23, 510 S.E.2d 875, 877-78 (Ga. App. 1999). Plaintiff has met this test.

### C.  Counts III & IV: Misrepresentation

In Counts III and IV, Plaintiff raises two counts of misrepresentation: fraudulent and negligent misrepresentation. She asserts, first, that Abbott made a series of public representations regarding the characteristics, ingredients and quality of its Similac products, which were, in fact, untrue and misleading because Abbott knew of the possibility that such products could cause gastrointestinal problems. Plaintiff alleges, further, that as a result of these representations, she was induced to purchase Similac products which were worth less than she paid for them and suffered "extreme mental anguish, and pain and suffering." (Am. Compl. ¶¶ 52, 54, 57, 58.) As Defendants point out, claims alleging fraud must be pleaded with particularity as required by FED. R. CIV. P. 9(b), and thus, a complaint must plead "the who, what, when, where, and how" of the alleged fraud. *Mizzaro v. Home Depot*, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008).

#### i.  Fraudulent Misrepresentation

According to Defendants, Plaintiff's fraudulent misrepresentation claim must be dismissed

7

because Gray has failed to plead fraud with sufficient particularity to satisfy Rule 9(b). In order to state a claim for fraudulent misrepresentation in Georgia, a plaintiff must allege "a false misrepresentation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by the plaintiff, and damage to the plaintiff." *Simpson v. Countrywide Home Loans*, No. 1:10-CV-0224, 2010 WL 3190693, *6 (N.D. Ga. April 26, 2010) (quoting *Daniel v. Lipscomb*, 225 Ga. App. 135, 137, 483 S.E.2d 325, 328 (Ga. App. 1997)). In this case, Gray has not sufficiently pleaded scienter, nor justifiable reliance. She claims that Abbott made the representations about Similac's safety with the "intention of depriving Plaintiff and Class members of property or otherwise causing injury" (Am. Compl. ¶ 55), yet offers no reason why Defendants would have intended deliberately to harm its customers. She claims, further, that she was "induced" to purchase Similac products because she relied on Abbott's advertising (Am. Compl. ¶ 57), but does not state when she viewed these promotional items, nor does she claim which particular statements she relied on. Plaintiff's fraudulent misrepresentation claim is dismissed.

### ii.     Negligent Misrepresentation

Defendants argue that Plaintiff's negligent misrepresentation claim, like the fraudulent misrepresentation claim, must also be dismissed because Gray has failed to plead that Abbott made a false statement of fact or relied upon any factual statement. In Georgia, "[t]he essential elements of negligent misrepresentation are "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Marquis Towers, Inc. v. Highland Group*, 265 Ga. App. 343, 346, 593 S.E.2d 903, 906 (Ga. App. 2004) (quoting *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426, 479 S.E.2d 727, 729 (1997)). Though courts in the Eleventh Circuit do not require a claim of negligent misrepresentation to meet the heightened pleading standard of Rule 9(b), such a claim must still meet the *Twombly/Iqbal* plausibility standard. *Kingdom Ins. Group, LLC v. Cutler and Associates,*

*Inc.*, No. 7:10–cv–85(HL), 2011 WL 2144791, *5 (M.D. Ga. May 31, 2011). Plaintiff's claims here do not meet that standard; Gray has failed to allege that she relied on any specific misrepresentation by Abbott. She claims that she relied on a series of misrepresentations concerning the safety of Similac products, but does not identify any such advertising statements. The main advertisement Plaintiff identifies concerns the nutritional value of Similac formula, but those statements do not address the product's overall safety, and Plaintiff does not argue that statements about promoting a formula's nutritional value are equivalent to confirming a product's safety. Accordingly, Plaintiff's negligent misrepresentation claim is dismissed.

        **D.**        **Counts V through VII: Warranty Claims**

Plaintiff alleges several breach of warranty claims: breach of express warranty, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose. Defendants contend that all three claims must be dismissed because privity is absent; they argue that Plaintiff did not purchase the product directly from the Defendants, and under Georgia law, the sale of a product by a retailer does not create privity between the ultimate purchaser and the manufacturer. While it is generally true that Georgia law "precludes the ultimate consumer from recovering on any express or implied warranty when the manufacturer sells the product to the original consumer, e.g., a retailer," privity with the ultimate consumer may nevertheless exist if "the manufacturer expressly warrants to the ultimate consumer that the product will perform in a certain way or that it meets particular standards . . . ." *Lee v. Mylan, Inc.*, No. 5:10-CV-361, 2011 WL 1458160, *4 (M.D. Ga. April 15, 2011). In *Lee*, a plaintiff brought an action against drug manufacturers after her mother died from fentanyl toxicity. The defendants argued that the plaintiff's warranty claims should be dismissed for lack of privity, but the court disagreed and found that "to the extent [that] the Plaintiff's express warranty claim is based upon affirmations of fact or promises to her mother, she has asserted a claim upon which relief may be granted . . . ." *Id.* at *5. Here, Plaintiff alleges she was directly provided express warranties that Similac

9

products were safe for use and contained "clinically proven ingredients." (Am. Compl. ¶ 65.) The court is satisfied that such allegations establish privity at this stage.

### i. Breach of Express Warranty

Under Georgia's Uniform Commercial Code governing the sale of goods, an express warranty is created by an "affirmation of fact or promise made by the seller to the buyer which relates to the goods, description of the goods, or sample or model that is made a part of the basis of the bargain." *Lee*, 2011 WL 1458160, *3; O.C.G.A. §§ 11-2-313(1)(a)-(c). As explained above, Plaintiff alleges that Abbott provided express warranties that Similac products build "immune support," "strong bones" and "brain and eye" development, when in fact, those products did not conform to what was advertised. (Am. Compl. ¶¶ 65, 67.) Defendants argue that Gray has not alleged that Abbott made any express factual representations about Similac that were false, and the court agrees, as Plaintiff's allegations do not suggest that Abbott breached any express warranty regarding the nutritional value of its products. While the absence of any insects in infant formula may arguably have been part of the basis for the bargain in this case, Plaintiff's allegation that the product her son ingested contained beetles does not on its own contradict Abbott's representations regarding Similac's overall nutritional value. As unappealing as the possibility may be, the court agrees with at least one other judge who has observed that "[a]n infant formula containing beetles could nonetheless improve immunity, bone strength, and brains and eyes, and provide important nutrition." *Shimrit Vavak v. Abbott Laboratories, Inc.*, SACV 10-1995 JVS, slip op. at 6-7 (C.D. Cal. March, 7, 2011). Plaintiff's breach of express warranty claim is accordingly dismissed.

### ii. Breach of Implied Warranty of Merchantability or Fitness for a Particular Purpose

Under Georgia's UCC, a warranty of merchantability is implied in a contract for a sale of goods if the seller is a merchant, whereas an implied warranty for fitness for a particular purpose

exists "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . ." O.C.G.A. §§ 11-2-314(1), 11-2-315.  Plaintiff alleges that Abbott breached the warranty of merchantability implied at the time of sale because she did not receive products that were safe to use, and thus the goods were not merchantable or fit for the ordinary purpose for which such goods are used.  (Am Compl. ¶ 74.) Gray claims, further, that Abbott had reason to know of the specific use for which Similac products are purchased, and that she relied on the expertise and skill of Abbott that its products were safe for children.  (Am. Compl. ¶¶ 71-72.) The court finds that Gray has successfully alleged all of the necessary elements for a breach of implied warranty of merchantability claim, but her claim for breach of implied warranty of fitness for a particular purpose must be dismissed.  The commentary to Georgia's UCC explains that

> [a] "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.  For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

O.C.G.A. § 11-2-315, cm 2.  Plaintiff Gray alleges that Abbott knew of the "specific use" for which SImilac products are used, but that use does not differ from the ordinary purpose for which the item is typically purchased, i.e., consumption by children.  Gray has therefore failed to state a claim for breach of implied warranty of fitness for a particular purpose.

### E. Count VIII: Unjust Enrichment

In Count VII, Plaintiff claims that the Abbott Defendants were unjustly enriched by any revenues they received from the sale of contaminated Similac products.  (Am. Compl. ¶ 85.)  In Georgia, "unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract," *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1294-95 (11th Cir. 2006), "but where the party sought to be charged has been conferred a benefit by the [claimant] which the

benefitted party equitably ought to return or compensate for." *Sampson v. Haywire Ventures, Inc.*, 293 Ga. App. 779, 781, 668 S.E.2d 286, 288 (Ga. App. 2008) (quoting *Smith v. McClung*, 215 Ga. App. 786, 789, 452 S.E.2d 229, 232 (Ga. App. 1994)). Defendants argue that Plaintiff's unjust enrichment claim should be dismissed because the complaint does not allow to the court to plausibly conclude that Gray was deprived of the benefit of her bargain, and moreover, Gray does not lack an adequate remedy at law. The court is satisfied that Plaintiff has adequately alleged that Abbott unjustly benefitted from the sale of Similac products, *see In re ConAgra Peanut Butter Products Liability Litigation*, No. 1:07-MD-1845-TWT, 2008 WL 2132233, *3 (N.D. Ga. 2008), but agrees with Defendants that adequate remedies at law remain available to Gray. "It is axiomatic that equitable relief is only available where there is no adequate remedy at law." *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir. 1994). Here, Plaintiff "repeat[s] and reallege[s]" every allegation in her unjust enrichment claim as stated in the other claims. The court has not dismissed Plaintiff's negligence and warranty based claims in their entirety, and thus, Gray may have a remedy at law based on those other claims. *See Jovine v. Abbott Laboratories, Inc.*, __F. Supp. 2d__, No. 11-CV-80111, 2011 WL 1376029, *6 (S.D. Fla. April, 12, 2011) (finding that "Plaintiff has a remedy at law as a properly pled claim under Florida law . . . if Defendant was negligent in the manufacture, distribution, etc. of its product, and Plaintiff was damaged by that negligence . . ."). Accordingly, the court dismisses Plaintiff's unjust enrichment claim.

### F. Count IX: Unfair and Deceptive Business Practices

In Count IX, Plaintiff alleges that Abbott had a statutory duty to "refrain from unfair or deceptive acts or practices in the manufacture, promotion and sale of their Similac products" under the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390. (Am. Compl. ¶ 92.) Gray also asserts a claim for relief on behalf of unnamed "alternative State Class" members in ten

other states, citing the consumer protection statutes of those jurisdictions.[3] (*Id.* ¶¶ 91, 95.) Defendants argue that Gray, as a resident of Georgia and the only named Plaintiff, may not assert claims under consumer protection statutes of other jurisdictions. At this stage, the court agrees. Because the complaint fails to name any other plaintiffs who may have suffered the injuries giving rise to relief under the other states' statues, Gray has no standing to bring those claims at this time. *See In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 418-19 (E.D. Pa. 2009) ("Because no named Plaintiff has alleged injury in Florida or sufficient contact with Florida, the named Plaintiffs have not stated a claim under Florida's consumer protection statute.").

      As to Gray's individual claim under the GFBPA, Defendants argue that Gray is statutorily barred from bringing such a claim because she did not provide Abbott with a written demand for relief 30 days prior to the filing of this suit "identifying the claimant and reasonably describing the alleged unfair or deceptive act or practice relied upon the injury suffered." O.C.G.A § 10-1-399(b). Defendants argue, further, that the GFBPA prohibits purported class action suits such as this one. Defendants are correct; Georgia courts have recognized that the GFBPA "expressly prohibits consumers class actions . . . by its very terms." *Honig v. Comcast of Georgia I, LLC*, 537 F.Supp.2d 1277, 1289 (N.D. Ga. 2008) (citing O.C.G.A. § 10-1-399(a); *Friedlander v. PDK Labs, Inc.*, 266 Ga. 180, 465 S.E.2d 670, 671 (1996) ("A person who suffers injury or damages, or whose business or property has been injured or damaged, as a result of consumer acts or practices may bring an action under the FBPA individually, but not in a representative capacity") (citations omitted). Gray's GFBPA claim is therefore dismissed.

---

      [3] Plaintiff cites consumer protections statutes from California, Florida, Illinois, Massachusetts, Minnesota, Missouri, New Jersey, North Dakota, Ohio, and Washington; though related in subject matter, none are identical to Georgia's Fair Business Practices Act. Plaintiff has not explained her choice to include potential plaintiffs from these other 10 states in the complaint. (Am. Compl. ¶ 95.)

**CONCLUSION**

For all of the foregoing reasons, the motion to dismiss Plaintiff's First Amended Class Action Complaint [8, 23] is granted in part and denied in part. Counts I, II, and VI survive this motion. The remaining claims are dismissed without prejudice. Plaintiff has leave to file a second amended complaint within 21 days, but the court notes that any such complaint must include allegations that satisfy the court that Gray is the proper representative for any class she may seek to represent.

ENTER:

Dated: July 22, 2011

_____
REBECCA R. PALLMEYER
United States District Judge